## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

_____

In Re:
                                        CHAPTER 7 CASE

Todd James Conway
Karie Hart Conway                       CASE NO. 05-39434 DDO

           Debtors
_____

### NOTICE OF HEARING AND MOTION FOR RELIEF FROM STAY

TO:  The Debtors and other entities specified in Local Rule 1204(a).


1.    Wells Fargo Financial Minnesota, Inc. (hereinafter "Wells Fargo"), by its undersigned attorney, moves the court for the relief requested below and gives notice of hearing herewith.

2.    The court will hold a hearing on this motion at 1:30 p.m. on September 13, 2006, in Courtroom 8 West, at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415.

3.    Any response to this motion must be filed and delivered not later than September 8, 2006 which is three (3) days (excluding Saturdays, Sundays and holidays) before the time set for the hearing or filed and served by mail not later than September 1, 2006, which is seven (7) days before the time set for the hearing (excluding Saturdays, Sundays and holidays). UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE REQUESTED RELIEF WITHOUT A HEARING.

4.    This is a core proceeding, the Petition commencing this case was filed on October 13, 2005.

5.  This motion arises under 11 U.S.C. §362 and Fed. R. Bankr. P. 4001.  This motion is filed under Fed. R. Bankr. P. 9014 and Local Rules 9006-1(d), 9013-1 through 9013-3. Movant requests relief with respect to property subject to its valid security interest.

6.  The Debtors executed a Note on July 15, 2005, payable to the order of Wells Fargo in the original principal amount of $333,067.36 (the "Note").

7.  On or about July 15, 2005, as security for repayment of the Note, the Debtors executed a Mortgage (hereinafter "Mortgage") whereby they granted Wells Fargo a security interest in the real estate located at 14402 Woodville Drive, Waseca, Minnesota (the "Property"), which Property was owned by the Debtors at the time this bankruptcy case was commenced.

8.  The Note and Mortgage provide that failure to make the payment due under the Note is a condition of default, the occurrence of which gives Wells Fargo the right to proceed with foreclosure of the Mortgage.

9.  Wells Fargo desires to foreclose its security interest in the aforementioned property and requests that the court to vacate the stay of actions and allow them to proceed with a foreclosure action pursuant to Minnesota Statutes Chapter 580.


WHEREFORE, Wells Fargo Financial Minnesota, Inc., by its undersigned attorney, moves the court for an order for judgment that the automatic stay provided by 11 U.S.C. Sec. 362 be terminated so as to permit the movant to complete foreclosure of the Mortgage and for such other relief as may be just and equitable.

Dated: August 23rd, 2006                    STEPHENSON & SANFORD, P.L.C.

                                            By:/e/ Mark D. Stephenson_____
                                            Mark D. Stephenson (Atty. ID 105223)
                                            Attorneys for Movant
                                            1905 East Wayzata Blvd., Suite 220
                                            Wayzata, MN 55391
                                            (952) 404-2100

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In Re:

Todd James Conway
Karie Hart Conway

        Debtors

CHAPTER 7 CASE

CASE NO. 05-39434 DDO

## AFFIDAVIT OF HEATHER DETTMAN IN SUPPORT OF MOTION
## OF WELLS FARGO FINANCIAL MINNESOTA, INC.
## FOR RELIEF FROM STAY

I, Heather Dettman, submit this Affidavit in support of the lift stay motion of Wells Fargo Financial Minnesota, Inc.

1.      Your Affiant is a Bankruptcy Representative for Wells Fargo Financial Minnesota, Inc. ("Wells Fargo").

2.      On or about July 15, 2005, the Debtors executed and delivered a Note payable to the order of Wells Fargo in the original principal amount of $333,067.36 (the "Note"). The Note is secured by a Mortgage also dated July 15, 2005 ("Mortgage") executed by the Debtors. The Mortgage is a lien against the Debtors' real estate located at 14402 Woodville Drive, Waseca, Minnesota (the "Property"). A true and correct copy of the Note and Mortgage are attached hereto as Exhibits A and B.

3.      The Note and Mortgage are in default as the result of the Debtors' failure to pay the monthly installments of each which have become on and since June 20, 2006. The total delinquent amount as of August 16, 2006 is $3015.18.

4.      As of August 16, 2006, the outstanding balance on the Note is $332,251.20.

5.    Wells Fargo respectfully requests that the automatic stay be lifted and Wells Fargo be allowed to proceed with foreclosure and the enforcement of its security interest.

6.    This Affidavit is made in support of Wells Fargo's motion for relief from the bankruptcy stay.

Executed on: August 16, 2006

_____
Heather Dettman

Subscribed and sworn to before me
this 16th day of August, 2006.

_____
Notary Public

```
MISTY RAINER
Notarial Seal - Iowa
Commission No. 729687
My Commission Expires 7-22-07
```

# ADJUSTABLE RATE NOTE

**NOTICE TO BORROWER: THIS NOTE CONTAINS A PROVISION ALLOWING FOR CHANGES IN THE INTEREST RATE. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM AND MINIMUM RATE I MUST PAY.**

| 07/15/05 | MANKATO, MN 56001 |
|---|---|
| [Date] | [City, State, Zip] |

14402 WOODVILLE DR
WASECA, MN 56093
[Property Address]

**1.     BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $333067.36 (this amount consists of the Amount Financed and any Points and is called "principal"), plus interest, to the order of the Lender. The Lender is Wells Fargo Financial Minnesota, Inc. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.     INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 6.39%. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(A) of this Note. Interest will be calculated on an interest-bearing basis.

**3.     PAYMENTS**

**(A)     Scheduled Payments**

I will pay principal and interest by making payments when scheduled. I will make my scheduled payments each month beginning on 08/20/05.

**(B)     Maturity Date and Place of Payments**

I will make these payments as scheduled until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

My scheduled payments will be applied to interest before principal. If, on 07/20/35, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my scheduled payments at 500 RAINTREE RD STE 45 MANKATO, MN 56001 or at a different place if required by the Note Holder.

**(C)     Amount of My Initial Scheduled Payments**

Each of my initial scheduled payments will be in the amount of U.S. $2081.17. This amount may change.

**(D)     Scheduled Payment Changes**

Changes in my scheduled payments will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my scheduled payment in accordance with Section 4 of this Note.

**(E)     Late Charge**

If the Note Holder has not received the full amount of any monthly payment by the end of 7 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5% of the full amount of my payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

94587330

Page 1 of 4

ORIGINAL
MN-2040-0705

EXHIBIT

A

tabbies

4.    **INTEREST RATE AND SCHEDULED PAYMENT CHANGES**

(A)    **Change Dates**

Each date on which my interest rate could change is called a "Change Date." The interest rate I will pay may change on _____07/20/08_____ and on every sixth month anniversary date thereafter that is before the maturity date. There will be no Change Dates on or after the maturity date. The interest rate in effect on the maturity date will remain in effect after the maturity date until the full amount of principal has been paid.

(B)    **The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the highest "Prime Rate" as published by the *The Wall Street Journal*.

The most recent month-end (defined as the last business day of that month) Index available before the date occurring one day preceding one month prior to the Change Date is called the "Current Index." For example, if your Change Date is May 13, the most recent month-end Index available on April 12 (one day preceding one month prior to May 13) would be the Index for March 31, assuming March 31 is a business day. If your Change Date is July 1, the most recent month-end Index available on May 31 would be the Index for April 30, assuming April 30 is a business day.

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

(C)    **Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding ___00.39_% (this number is referred to as the "Margin") to the Current Index. The result of this calculation will be rounded off by the Note Holder to the nearest 0.125%. Subject to the limitations stated in Section 4(D) below, this amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the scheduled payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my scheduled payment.

(D)    **Limits on Interest Rate Changes**

My interest rate will never be increased or decreased on the first Change Date by more than three (3%) percentage points. For all Change Dates thereafter, my interest rate will never be increased or decreased by more than one (1%) percentage point. Subject to any limitation set forth in Section 6 below, my interest rate will never be more than six (6%) percentage points greater than the initial interest rate set forth in Section 2 above. Notwithstanding anything to the contrary in this Note, my interest rate will never decrease below 3.5%.

(E)    **Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new scheduled payment beginning on the first scheduled payment date after the Change Date until the amount of my scheduled payment changes again.

(F)    **Notice of Changes**

At least 25 days, but no more than 120 days, before the effective date of any payment change, the Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my scheduled payment. The notice will include information required by law to be given to me and also the telephone number of a person who will answer any question I may have regarding the notice.

5.    **PREPAYMENT**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

6.    **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment. The Rate of Interest and other charges on this Note are



94587330

authorized by Section 334.01 of the Minnesota Statutes as modified by Section 47.204 of the Minnesota Statutes.

**7.     BORROWER'S FAILURE TO PAY AS REQUIRED**

(A)     **Default**

If I do not pay the full amount of each scheduled payment on the date it is due, I will be in default.

(B)     **Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(C)     **No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full or does not exercise the right of set-off as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(D)     **Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.     GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(B) above or at a different address if I am given a notice of that different address.

**9.     OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.     WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.     SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as the Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security

94587330

ORIGINAL
MM-3040-0703

Instrument without further notice or demand on Borrower.

**I ACKNOWLEDGE THE EXISTENCE OF A SEPARATE ARBITRATION AGREEMENT
SIGNED CONCURRENTLY WITH THIS NOTE, AND I SPECIFICALLY AGREE TO BE
BOUND BY ITS TERMS.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Borrower

_____ (Seal)
TODD J CONWAY

Borrower

_____ (Seal)
KARE CONWAY

Borrower

_____ (Seal)

Borrower

_____ (Seal)

*[Sign Original Only]*

94567330

ORIGINAL
MN-3048-0705

*261296*

**261296**

Office of the County Recorder  Doc. No. A261296
Waseca County, Minnesota

Certified, filed and/or recorded      Pgs. *13*
on 07/27/2005 at 12:05 *P* M

Fee: $ 46.00

| | |
|---|---|
| Well Certificate | Linda Karst |
| [ ] Received | Waseca County Recorder |
| [X] Not Required | by _____ |

WASECA COUNTY
MORTGAGE REGISTRATION
DATE    *7-27-05*
NUMBER    *26 220*
MRT PAID $    *766.05*
AG FEE PAID $    *5.00*
*Jane Huggenberg Director*
COUNTY TREASURER

## MORTGAGE     *IP2-NA-GAC*     *1205*

DEFINITIONS    *T# 1739156*

GAC/     *k*
5401 Gamble Dr., Ste. 300
St. Louis Park, MN 55416

Words used in multiple sections of this document are defined below and other words are defined in Sections 9, 11, 16, 18 and 19. Certain rules regarding the usage of words used in this document are also provided in Section 14.

**(A)** "Security Instrument" means this document, which is dated _____07/15/05_____, together with all Riders to this document.

**(B)** "Borrower" is TODD J. CONWAY AND KARIB CONWAY, HUSBAND AND WIFE, AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP AND NOT AS TENANTS IN COMMON

Borrower is the mortgagor under this Security Instrument.

**(C)** "Lender" is Wells Fargo Financial Minnesota, Inc. Lender is a corporation organized and existing under the laws of Minnesota. Lender's address is _____500 RAINTREE RD STE 45 MANKATO, MN 56001_____. Lender is the mortgagee under this Security Instrument.

**(D)** "Note" means the promissory note signed by Borrower and dated _____07/15/05_____. The Note states that Borrower owes Lender $ 333067.36 _____ (U.S. Dollars) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than _____07/20/35_____.

**(E)** "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

**(F)** "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G)** "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider    [ ] Second Home Rider
[ ] Balloon Rider    [ ] Planned Unit Development Rider    [ ] Other(s) [specify] _____
[ ] 1-4 Family Rider    [ ] Biweekly Payment Rider

**(H)** "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I)** "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J)** "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K)** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 4) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or

||||| 94587330

MN-2040-0105



EXHIBIT
B
tabbies®

**261296**

any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(L)     "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(M)     "Periodic Payment" means the regularly scheduled amount due for principal and interest under the Note.

(N)     "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(O)     "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the _____ COUNTY _____ of
[Type of Recording Jurisdiction]

_____ WASECA _____ :
[Name of Recording Jurisdiction]

**The description of the property is attached hereto as "Addendum A to Mortgage – Description of Property" and is specifically incorporated herein.**

which currently has the address of _____ 14402 WOODVILLE DR _____
[Street]

_____ WASECA _____ , Minnesota _____ 56093 _____ ("Property Address"):
[City]                                          [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.     **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.


84587330

MN-2040-0705

**261296**

Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

9.    **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 17, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.



B4587330

MN-2040-0705

261296

**10.    Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**11.    Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 16, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 18) and benefit the successors and assigns of Lender.

**12.    Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**13.    Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**14.    Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.

94587330

MN-2640-0708

**261296**

In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

15.    **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument at the time such documents are executed or within a reasonable time thereafter.

16.    **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 16, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 13 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

17.    **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, Reasonable Attorneys' Fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 16.

18.    **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

19.    **Hazardous Substances.** As used in this Section 19: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and

94567330

MN-2040-0705

261296

radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

20.    Acceleration; Remedies. Lender shall give notice to Borrower by certified mail to the address of the Property or another address designated by Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 16 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 20, including, but not limited to, Reasonable Attorneys' Fees.

If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, Reasonable Attorneys' Fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

21.    Release. Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

21.    Waiver of Homestead.  Borrower waives all rights of homestead exemption in the Property.

23.    Interest on Advances. The interest rate on advances made by Lender under this Security Instrument shall not exceed the maximum rate allowed by Applicable Law.

94587330

MH-3040-2703

**261296**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Borrower

_____ (Seal)
TODD J CONWAY

Borrower

_____ (Seal)
KARJE CONWAY

Borrower

_____ (Seal)

Borrower

_____ (Seal)

_____ [Space Below This Line For Acknowledgment] _____

State of Minnesota        )
                          ) ss
County of __Blue Earth__  )

The foregoing instrument was acknowledged before me this _15th_ day of _____ July, 2005 _____ by TODD J. CONWAY AND KARJE CONWAY, HUSBAND AND

WIFE, AS JOINT TENANTS WITH RIGHT OF

SURVIVORSHIP AND NOT AS TENANTS IN COMMON



My Commission Expires: _1-31-08_          _____
                                                         Notary Public

This instrument was drafted by Wells Fargo Financial, Inc., 604 Locust, Des Moines, Iowa 50309.
Return to: Wells Fargo Financial Minnesota, Inc., 500 RAINTREE RD STE 45
MANKATO, MN 56001

NICHOLAS J. TEIGLAND
Notary Public
Minnesota
My Commission Expires Jan 31, 2008



261296

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made on _____ 07/15/05 _____ and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Wells Fargo Financial Minnesota, Inc. (the "Lender") of the same date and covering the property described in the Security Instrument and located at: _____ 14402 WOODVILLE DR _____

_____ WASECA, MN 56093 _____
[Property Address]

**NOTICE: THE SECURITY INSTRUMENT SECURES A NOTE WHICH CONTAINS A PROVISION ALLOWING FOR CHANGES IN THE INTEREST RATE. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS. THE NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM AND MINIMUM RATE I MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower (hereinafter "I," and "me") and Lender (hereinafter "Note Holder") further covenant and agree as follows:

1. **INTEREST RATE AND PERIODIC PAYMENT CHANGES**
   The Note provides for an initial interest rate as well as for changes in the interest rate and the payments.

2. **PAYMENTS**
   **(A)    Scheduled Payments**
   I will pay principal and interest by making payments when scheduled. I will make my scheduled payments each month as required under the Note.
   **(B)    Maturity Date and Place of Payments**
   I will make these payments as scheduled until I have paid all of the principal and interest and any other charges described below that I may owe under the Note.
   My scheduled payments will be applied to interest before principal. If, on the Maturity Date set forth in the Note I still owe amounts under the Note, I will pay those amounts in full on the "maturity date."
   I will make my scheduled payments at or to the place(s) specified by the Note, or at a different place if required by the Note Holder.
   **(C)    Amount of My Initial Scheduled Payments**
   Each of my initial scheduled payments will be in the amount as specified in the Note. This amount may change as provided in the Note.
   **(D)    Scheduled Payment Changes**
   Changes in my scheduled payments will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed



94587330

MN-2040-0/05

261296

amount of my scheduled payment in accordance with the Note.

    **(E)    Late Charge**

       If the Note Holder has not received the full amount of any monthly payment by the end of the grace period specified in the Note, I will pay a late charge to the Note Holder as provided in the Note. I will pay a late charge promptly but only once on each late payment.

**3.    INTEREST RATE AND SCHEDULED PAYMENT CHANGES**

    **(A)    Change Dates**

       Each date on which my interest rate could change is called a "Change Date." The interest rate I will pay may change on the Change Date specified in the Note, and on every sixth month anniversary date thereafter that is before the maturity date. There will be no Change Dates on or after the maturity date. The interest rate in effect on the maturity date will remain in effect after the maturity date until the full amount of principal has been paid.

    **(B)    The Index**

       Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the highest "Prime Rate" as published by the *The Wall Street Journal*.

       The most recent month-end (defined as the last business day of that month) Index available before the date occurring one day preceding one month prior to the Change Date is called the "Current Index." For example, if your Change Date is May 13, the most recent month-end Index available on April 12 (one day preceding one month prior to May 13) would be the Index for March 31, assuming March 31 is a business day. If your Change Date is July 1, the most recent month-end Index available on May 31 would be the Index for April 30, assuming April 30 is a business day.

       If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

    **(C)    Calculation of Changes**

       Before each Change Date, the Note Holder will calculate my new interest rate by adding the Margin specified in the Note to the Current Index. The result of this calculation will be rounded off by the Note Holder to the nearest 0.125%. Subject to the limitations stated in Section 3(D) below, this amount will be my new interest rate until the next Change Date.

       The Note Holder will then determine the amount of the scheduled payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my scheduled payment.

    **(D)    Limits on Interest Rate Changes**

       My interest rate will never be increased or decreased on the first Change Date by more than three (3%) percentage points. For all Change Dates thereafter, my interest rate will never be increased or decreased by more than one (1%) percentage point. Subject to any limitation set forth in Section 6 of the Note, my interest rate will never be more than six (6%) percentage points greater than the initial interest rate set forth in the Note. Notwithstanding anything to the contrary in the Note, my interest rate will never decrease below 3.5%.

    **(E)    Effective Date of Changes**

       My new interest rate will become effective on each Change Date. I will pay the amount of my new scheduled payment beginning on the first scheduled payment date after the Change Date until the amount of my scheduled payment changes again.

    **(F)    Notice of Changes**

       At least 25 days, but no more than 120 days, before the effective date of any payment change, the Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my scheduled payment. The notice will include information required by law to be given to me and also the telephone number of a person who will answer any question I may have regarding the notice.

☒    **FUNDS FOR TAXES AND INSURANCE**

       Uniform Covenant 2 of the Security Instrument is waived by the Lender.

04587330

MN-2040-0/05

261296

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

Borrower

_____ (Seal)
TODD J CONWAY

Borrower

_____ (Seal)
KARI CONWAY

Borrower

_____ (Seal)

Borrower

_____ (Seal)

94567330

MN-2048-0706

**261296**

## ADDENDUM A
## TO
## MORTGAGE

### Description of Property

LOT TEN (10), BLOCK FOUR (4), THE HIGHLANDS, BEING IN THE NW 1/4
OF 21-107N-22W, WASECA COUNTY, MINNESOTA.

ABSTRACT PROPERTY

TAX ID# 12-326-0750

TODD J CONWAY          DATE          KARIE CONWAY          DATE

7/15/05          7/15/05

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In Re:

Todd James Conway
Karie Hart Conway

          Debtors

CHAPTER 7 CASE

CASE NO. 05-39434 DDO

---

### MEMORANDUM IN SUPPORT OF MOTION
### FOR RELIEF FROM AUTOMATIC STAY

#### FACTS

On or about July 15, 2005, the Debtors executed and delivered a Note payable to the order of Wells Fargo Financial Minnesota, Inc. in the original principal amount of $333,067.36 (the "Note"). The Note is secured by a Mortgage also dated July 15, 2005 ("Mortgage") executed by the Debtors. The Mortgage is a lien against the real estate located at 14402 Woodville Drive, Waseca, Minnesota (the "Property"), which Property was owned by the Debtors at the time this bankruptcy case was commenced. The Mortgage was recorded with the Waseca County Recorder on July 27, 2005 as Document No. A261296.

The Mortgage and underlying promissory note provide that the failure to make payments is a condition of default, the occurrence of which gives the mortgagee the right to foreclose the Mortgage. The Mortgage is in default due to the Debtor's failure to make the loan payments that have become due during and since June 20, 2006. (*See Affidavit of Heather Dettman).*

#### LAW

## WELLS FARGO IS ENTITLED TO AN ORDER LIFTING THE AUTOMATIC STAY UNDER 11 U.S.C. SECTION 362(d)(1) & (2).

On request of a party in interest and after notice and hearing the court shall grant relief from the stay for cause including lack of adequate protection.  11 U.S.C. 362(d)(1).  11 U.S.C. 362(d) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if –
>
>> (a) the debtor does not have any equity in such property; and
>>
>> (b) such property is not necessary to an effective reorganization…

Pursuant to 11 U.S.C. Section 362(g) the burden is on the Debtor to prove the absence of cause, adequate protection and/or that the property is necessary to effective reorganization.

Pursuant to 11 U.S.C. 362(d)(1), Wells Fargo is entitled to relief from the stay.

CONCLUSION

Wells Fargo is entitled to relief from the automatic stay pursuant to 11 U.S.C. Section 362(d)(1) for cause.  Wells Fargo has met its burden as discussed above and respectfully requests an order of this Court modifying the automatic stay consistent with the attached proposed Order.

Dated: August 23rd, 2006                    STEPHENSON & SANFORD, P.L.C.

                                            By:/e/ Mark D. Stephenson
                                            Mark D. Stephenson (Atty. ID 105223)
                                            Attorneys for Movant
                                            1905 East Wayzata Blvd., Suite 220
                                            Wayzata,  MN  55391,  (952)  404-2100

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In Re:

                                 CHAPTER 7 CASE

Todd James Conway

Karie Hart Conway                          CASE NO. 05-39434 DDO

           Debtors

---

## ORDER

This case is before the Court on the motion of Wells Fargo Financial Minnesota, Inc. for relief from the automatic stay, pursuant to 11 U.S.C. Section 362. Based on the motion and the file,

IT IS HEREBY ORDERED that Wells Fargo Financial Minnesota, Inc., its assignees and/or successors in interest, is granted relief from the stay of actions imposed by 11 U.S.C. 362 and 11 U.S.C 1301 with regard to that certain Mortgage dated July 15, 2005, executed by the Debtors and covering the following property: 14402 Woodville Drive, Waseca, Minnesota, which mortgage was recorded with the Waseca County Recorder on July 27, 2005 as Document No. A 261296. Wells Fargo Financial Minnesota, Inc. may proceed in all respects to foreclose and enforce said security interest in accordance with Minnesota law.

Notwithstanding FED. R. BANKR. P. 4001(a)(3), this order is effective immediately.

DATED: _____, 2006          BY THE COURT:

                                            _____

                                            The Honorable Dennis D. O'Brien

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

---

In Re:

                       CHAPTER 7 CASE

Todd James Conway

Karie Hart Conway                     CASE NO. 05-39434 DDO

           Debtors

---

### UNSWORN DECLARATION FOR PROOF OF SERVICE

Christopher R. Herbers of Stephenson & Sanford, PLC, attorneys licensed to practice law in this court, with office address at Suite 220, 1905 East Wayzata Boulevard, Wayzata, Minnesota, declares under penalty of perjury that on the 23rd day of August, 2006, I served the annexed Notice of Hearing and Motion for Relief from Stay, Memorandum in Support of Motion for Relief from Automatic Stay, Affidavit of Heather Dettman, and proposed Order to each person referenced below, a copy thereof by enclosing the same in an envelope with first class mail postage prepaid and depositing the same in the post office at Wayzata, Minnesota addressed to each of them as follows:

Todd James Conway
14402 Woodville Drive
Waseca, MN 56093

Karie Hart Conway
14402 Woodville Drive
Waseca, MN 56093

       And I declare, under penalty of perjury, that the foregoing is true and correct.

Dated this 23rd day of August, 2006.          <u>/e/ Christopher R. Herbers</u>